Jack **MANNING** and Clara Ann Manning

v.

**MOBILE AERIAL TOWERS, INC.**
and Altec, Inc.

**Civ. A. No. 7863.**

United States District Court,
E. D. Tennessee, N. D.

Nov. 21, 1972.

W. Zane Daniel, Banks, Daniel & Campbell, Knoxville, Tenn., J. D. Lee, Madisonville, Tenn., for plaintiffs.

Cheek, Taylor & Groover, Knoxville, Tenn., for Altec.

George D. Montgomery, Knoxville, Tenn., for Mobile Aerial Towers, Inc.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action is a third-party action brought under the Tennessee Workmen's Compensation Act by the injured workman against the manufacturer and the distributor of a product sold to plaintiff's employer and used by plaintiff in his employment. T.C.A. § 50–914. The product in question is a "Hi-Ranger," a bucket-like apparatus attached to the end of a boom used to elevate men standing in the bucket to enable them to work on electric power lines. Plaintiff, Jack Manning, contends that while working in the aforesaid bucket a defective servo valve permitted the bucket to tilt, thereby throwing him against live power lines. As a result, he lost both his arms. Mrs. Manning contends that she is entitled to damages for loss of consortium. This cause was tried by a jury that returned verdicts of $450,000.00 in favor of Mr. Manning and $75,000.00 in favor of Mrs. Manning.

Before the Court for consideration are motions by each defendant for judgment n. o. v. or, alternatively, for a new trial. In addition, Altec seeks a judgment over against Mobile Aerial Towers. The last motion is without merit since Altec failed to plead a cross-action.

The defense of the statute of limitations, previously overruled, is without merit. See Dobbins v. Terrazzo Machine & Supply Company, 479 S.W.2d 806 (Tenn., 1972). The same rule applies to Mrs. Manning's cause of action which is derivative in nature.

Altec's claim that it was denied due process is also without merit. This claim is based on its contention that the Court refused to allow its counsel to examine and cross-examine witnesses except through counsel for Mobile Aerial Towers. That contention is a misleading interpretation of what occurred. Altec's counsel was permitted to examine without restriction the first three of the nine witnesses. His examination of these witnesses was repetitive, whereupon, the Court suggested that he submit questions through counsel for his co-defendant. The Court expressed the opinion, which was not challenged until after the verdicts were returned, that the defendants stood in the same position.

A more difficult question presented by these motions is whether there is enough evidence in the record to support a finding of liability. Plaintiffs' expert testified that the servo valve was de-

fective and that this defect could cause the bucket to tilt. Defendant's expert testified that once the bucket became stationary the servo valve became inoperative and that the locking valve held it in place.

Although no one saw the accident itself, and Mr. Manning had no recollection of it, the surrounding circumstances was clearly established. The bucket was stationary with Mr. Manning's shoulders eight to ten inches from a live wire. The roar of electric current jumping to another conductor was heard, and Mr. Manning was subsequently found on the ground with severely burned arms. The men who worked with this particular machine testified that after it was locked into position the bucket would often tilt and that this problem had existed for over four years.

One groundman, with seventeen years' experience, testified to his opinion that the bucket tilted thereby causing Mr. Manning's injuries. He stated that the basis of his opinion was the fact that Mr. Manning had enough, that is, the usual amount of, clearance for safety, that the bucket "could sometimes flop like a wild thing," and that "there was no other way he could get in [the live wire]." Of course, Mr. Manning could have been guilty of contributory negligence, but otherwise the basis of this opinion is reasonable. The jury was entitled to consider this opinion for whatever it was worth.

■ In the opinion of the Court, there was enough evidence to sustain a finding of liability.

■ Another difficulty is that these verdicts are substantially higher than those rendered in similar actions under similar circumstances in recent years. Mr. Manning proved medical expenses and lost wages of approximately $69,-000.00. Assuming that he continued to earn at the rate of $11,000.00 per year and retired at age sixty-five, the value of his future earnings, capitalized at 6%, is approximately $199,000.00. Thus, his total proven economic loss is around $268,000.00.

■■ Proof of damages is lacking in Mrs. Manning's action for loss of consortium. Consortium has been defined as:

"   .   .   . the conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation."

We charged the jury in this case as to that definition and further charged them that loss of consortium is a right of action separate from that of the husband for his damages, that loss of services is a part of the loss of consortium, and that both loss of services and loss of consortium must be proven by the wife.

■ It is to be observed from this definition that there are two main elements of damage in this cause of action. First is the loss of conjugal relations. Mrs. Manning experienced this loss for the few weeks Mr. Manning was in the hospital and, perhaps, for a comparatively short time thereafter. These relations were resumed some time ago, and Mr. Manning underwent a vasectomy. The damages from this loss are not great. The second element of damage is loss of services. There is evidence in the record that Mr. Manning did the usual things husbands are expected to do, namely, mow the grass, wash the dishes and sweep the floors. As the Court recalls there is no proof in the record to show the value of these services in monetary terms. This value could not be large, and, in no case, could it be said to amount to $75,000.00.

Accordingly, we are constrained to grant a remittitur of $45,000.00 as to Mrs. Manning's verdict and of $100,-000.00 in the case of Mr. Manning. Unless these remittiturs are accepted within in ten days, a new trial will be granted.